UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK JAMES SCHULMAN,

     Plaintiff,

v.                         Case No.:  8:22-cv-785-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Mark James Schulman seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for adult child disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a Reply Brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A.    **Social Security Eligibility for Disabled Adult Child Insurance Benefits**

Social Security Disability Insurance ("SSDI") provides that a disabled adult child may receive disability insurance benefits under the Social Security Act based on the earnings record of an insured person who is entitled to old-age or disability benefits or has died and was a fully or currently insured individual. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a). To qualify for these benefits, a claimant must meet the criteria in the regulations, including that the individual is over 18 years old, is unmarried, and the disability began before the individual became 22 years old. 20 C.F.R. § 404.350(a)(1)-(5).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

**B.     Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that

the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

In adult child disability insurance benefits cases, the ALJ employs the same five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4) that applies to adult applicants. *Bowes v. Comm'r of Soc. Sec.*, No. 6:18-cv-349-37TBS, 2018 WL 7020191, at *3 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 6:18-cv-349-37TBS, 2019 WL 175269 (M.D. Fla. Jan. 11, 2019). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C. Procedural History

Plaintiff filed an application for adult child disability insurance benefits on January 21, 2020, alleging disability beginning November 1, 2000. (Tr. 101, 178-84). The application was denied initially and on reconsideration. (Tr. 101, 116).

Plaintiff requested a hearing and on March 11, 2021, a hearing was held before Administrative Law Judge Elving Torres ("ALJ"). (Tr. 71-88). On May 26, 2021, the ALJ entered a decision, finding Plaintiff was not under a disability at any time from age 18 on July 13, 2005, and prior to July 13, 2009, the date he attained age 22. (Tr. 10-18).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on October 13, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on April 1, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff was born on July 13, 1987, and had not attained the age of 22 as of November 1, 2000, the alleged onset date of disability, "but the adjudication herein is from age 18 on July 13, 2005, through prior to age 22." (Tr. 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2005, the date he attained the age of 18. (Tr. 12). At step two, the ALJ found that from the age of 18 and prior to attaining the age of 22, Plaintiff had the following severe impairments: "bipolar disorder with depression, generalized anxiety disorder, and history of attention deficit hyperactivity disorder (ADHD)." (Tr. 12). At step three, the ALJ

found that prior to attaining the age of 22, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> From age 18 and prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he could understand and carry out routine, repetitive, unskilled tasks, make basic decisions, and adjust to simple changes in a work setting, as long as interaction with the public, coworkers, and supervisors was no more than frequent.

(Tr. 14).

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 17). At step five, the ALJ found that considering Plaintiff's age (prior to attaining age 22), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 17). The vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) agricultural worker, DOT 401.687-010,[1] medium, unskilled, SVP 2

(2) general farmworker, DOT 402.687-010, medium, unskilled, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(3)   industrial cleaner, DOT 381.687-018, medium, unskilled, SVP 2.

(Tr. 18). The ALJ concluded that Plaintiff was not under a disability at any time from age 18 on July 13, 2005, and prior to July 13, 2009, the date he attained the age of 22. (Tr. 18).

## II.   Analysis

On appeal, Plaintiff raises five issues. As stated by Plaintiff, they are:

(1)   The ALJ failed to comply with SSR 18-01p in determining the established onset date of Plaintiff's disability.

(2)   The ALJ's mental residual functional capacity assessment is not supported by substantial evidence.

(3)   The ALJ failed to properly consider statements from Plaintiff's parents as required by SSR 11-2p.

(4)   The ALJ's reasons for finding the opinion of Dr. Lopez, Plaintiff's longtime treating psychiatrist, to be unpersuasive, are not supported by substantial evidence; and

(5)   The ALJ's reasons for not crediting Plaintiff's testimony are not supported by substantial evidence.

(Doc. 25, p. 1). The Court begins with the first issue regarding SSR 18-01p and then turns to the issue on whether substantial evidence supports the ALJ's persuasiveness finding about Dr. Lopez's opinions.

### A.      Failure to Comply with SSR 18-01p in Establishing Onset Date

In short, Plaintiff argues the ALJ erred in failing to obtain and consider Plaintiff's subsequent favorable Supplemental Security Income ("SSI") claim, which was filed on April 18, 2011, and benefits were awarded as of that date. (Doc. 25, p. 14-16). Plaintiff was 23 years old on the SSI application date. (Doc. 25, p. 14). Before delving into the arguments, some background for the case is helpful.

In order to qualify for disabled adult child insurance benefits, or SSDI, a plaintiff must: (1) be an insured person's child; (2) be dependent on the insured; (3) apply for benefits; (4) be unmarried; and (5) either be under the age of 18, or over 18 years old, and have a disability that began before the age of 22 years, or qualify for benefits as a full-time student. 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a)(1)-(5). Here, Plaintiff was over the age of 18 when he applied for disabled adult child insurance benefits. (Tr. 77, 178). As the ALJ explained at the hearing and Plaintiff's counsel agreed, the relevant period to consider is from the age of 18 through before Plaintiff attained the age of 22, or from July 13, 2005, through July 12, 2009. (Tr. 76-77); *see also* (Tr. 12, 13, 14, 17).

Plaintiff argues that the ALJ erred by not obtaining and considering the SSI benefits file or even acknowledging the award. (Doc. 25, p. 15-16). To reiterate, benefits on the SSI claim were awarded as of April 18, 2011, but the relevant time frame here is from July 13, 2005 through July 12, 2009, more than twenty-one

months before the SSI claim application date. In SSI claims, benefits relate to the SSI application date and forward. *See* 20 C.F.R. § 416.335 ("When you file an application [for SSI] in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application."). Thus, Plaintiff must demonstrate that the prior claim file contained evidence relevant to the period here, and he has not.

Plaintiff refers to SSR 18-01p and HALLEX I-2-1-13(B)(2), claiming that they apply because the Commissioner previously found Plaintiff disabled as of April 18, 2011, at age 23. (Doc. 25, p. 14). Plaintiff's reliance on these regulations is misplaced. SSR 18-1p discusses the method to determine an established onset date in disability claims. SSR 18-1p, 2018 WL 4945639. Plaintiff argues that SSR 18-1p applies here because the Commissioner previously found Plaintiff disabled as of April 18, 2011 in the SSI claim, and a potential onset date could have been earlier than April 18, 2011. (Doc. 25, p. 14; Doc. 29, p. 3). Thus, Plaintiff argues that the prior claim "may contain" evidence from a potential earlier onset date. (Doc. 29, p. 3).

Plaintiff also relies of HALLEX I-2-1-13(B)(2), which provides in part:

> HO staff must consult with an ALJ about obtaining a prior
> claim(s) file when it may be necessary for a full adjudication
> of the issues before the ALJ. An ALJ will generally find that

evidence in a prior claim(s) file is necessary for a full adjudication of the issues when the ALJ determines:

• There is a need to establish a longitudinal medical, educational, or vocational history; or

• The impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim.

2014 WL 2600156. Plaintiff argues that HALLEX I-2-1-13(B)(2) supports his argument that the ALJ should have obtained and considered the prior SSI file. (Doc. 25, p. 16).

In all of his arguments, Plaintiff merely speculates that the prior SSI file "may contain" some possible relevant evidence to the time period at issue in the instant SSDI case. As the Commissioner argues, Plaintiff, who had access to his prior file, did not produce one shred of evidence from the SSI file that related to his functioning on or before his 22nd birthday, and failed to show any prejudice that would justify remand in this case. The Court agrees. With no showing that the prior SSI file contains any evidence relevant to the period here, the ALJ did not err in failing to acknowledge the prior SSI decision or in failing to obtain the prior claim file. Even so, because this matter is remanded on other grounds, the Commissioner may reconsider whether the prior 2011 claim file should be associated and considered here.

### B.    Persuasiveness of Dr. Lopez's Opinions

Plaintiff argues that the reasons for finding Plaintiff's treating psychiatrist Ron Lopez, M.D.'s opinions unpersuasive are not supported by substantial evidence. (Doc. 25, p. 28). The Commissioner contends that the ALJ properly applied the regulations to determine that Dr. Lopez's opinions were unpersuasive. (Doc. 27, p. 21). Substantial evidence does not support the ALJ's finding that Dr. Lopez's opinions were unpersuasive.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other

evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R.

§§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Dr. Lopez treated Plaintiff since November 2000, well before the relevant time period, and continued to treat Plaintiff through at least February 2021, a period of over twenty years. (Tr. 207, 413, 414). Dr. Lopez diagnosed Plaintiff with Bipolar Disorder, and Mixed and Generalized Anxiety Disorder. (Tr. 415). Along with progress notes,[2] Dr. Lopez wrote three letters dated March 10, 2011, January 25, 2021, and February 23, 2021. (Tr. 207-208, 413-14, 415-16).

Dr. Lopez drafted a March 2011 letter (less than two years from the end of the relevant period) upon request so that Plaintiff would be considered for transcranial magnet stimulation. (Tr. 207). In that letter, Dr. Lopez provided a history of Plaintiff's mental health issues. (Tr. 207). Plaintiff began seeing Dr. Lopez with chronic symptoms of anxiety, including worry and separation anxiety, and a refusal to attend school. (Tr. 207). Dr. Lopez noted that Plaintiff had a significant history of learning disabilities, which complicated his anxiety. (Tr. 207). Dr. Lopez discussed

---

[2] Dr. Lopez's progress notes for the relevant period are handwritten and challenging to decipher. (*See* Tr. 285-299).

the different types of medication regimens he prescribed to help with Plaintiff's issues. (Tr. 207). Dr. Lopez referred to a May 2006 visit when he added Abilify to the medication regimen "due to increasing episodes of aggression and temper outbursts." (Tr. 207, 293). He found Plaintiff responded well to this new regimen until June 2008, "when he once again decompensated which was related to not being successful at attending school in the Orlando area and having to return home." (Tr. 207, 289). Dr. Lopez again adjusted Plaintiff's medication regimen to address the problem. (Tr. 207). Dr. Lopez found that "[d]ue to the presence of increased obsessive symptoms, [Plaintiff] was tried on Luvox, however, Mark did not appear to be responsive to this medication and we went back to Cymbalta 60 mg qam." (Tr. 207). By February 2010 – after the relevant period – Dr. Lopez noted that Plaintiff had increased mood instability and aggressive outbursts, and he changed the medication regimen again. (Tr. 207).

In a January 2021 letter, Dr. Lopez reiterated that he had been treating Plaintiff since November 2000, and had been closely monitoring Plaintiff while in treatment. (Tr. 415). Dr. Lopez found Plaintiff's condition throughout the years to be severe "based on the significant impact it has had on his level of global functioning." (Tr. 415). Dr. Lopez continued to see Plaintiff about every two or three months for follow-up treatment. (Tr. 415). Dr. Lopez found Plaintiff "fairly stable on his medication regimen," even though he continued to have episodes of depression,

difficulties with sleep, and high levels of anxiety throughout the day. (Tr. 415). While Dr. Lopez found Plaintiff's symptoms were in remission in January 2021, he also found that Plaintiff's "prognosis in regards to being able to return to work are extremely poor and at this point he has reached overall maximum medical improvement." (Tr. 415).

In a February 2021 letter, Dr. Lopez reiterated that Plaintiff's "condition through the years has proven to be severe based on the significant impact it has had on his level of global functioning." (Tr. 413). He specifically found that "[f]rom July 2005 until July of 2009 the patient's severe psychiatric condition remained unstable with frequent periods of decompensation and impairment in all levels of functioning." (Tr. 413). Dr. Lopez also noted that Plaintiff was "fairly stable on his medication regimen" but continued to have episodes of depression, sleep difficulties, and high levels of anxiety throughout the day." (Tr. 413). He again found that even though his symptoms were in remission at that time, his prognosis regarding returning to work was "extremely poor." (Tr. 413). Dr. Lopez also found that Plaintiff's medications caused significant side effects of sedation, including slowing cognitive abilities and blunting of mood, impairing Plaintiff's focus, concentration, and processing speed. (Tr. 413). Dr. Lopez also opined that Plaintiff's impairments could be expected to present almost every day and because of the chronicity of his mood condition, his symptoms waxed and waned. (Tr. 414). He further opined that

Plaintiff may be absent from work three or four days a week as a result of these severe symptoms. (Tr. 414).

The ALJ considered Dr. Lopez's progress notes from August 2005 through April 2009. (Tr. 15). He found few progress notes, with these minimal notes showing various prescribed medications and Plaintiff often being stable despite some anxiety. (Tr. 15). Recognizing the limited relevant time period, the ALJ nonetheless also considered Dr. Lopez's subsequent progress notes in late 2019 and 2020, and in early 2021, but noted that these progress notes were less probative of the issue of disability during the period at issue. (Tr. 16). The ALJ then made the following persuasiveness finding:

> The undersigned finds unpersuasive the opinion of the claimant's psychiatrist, Dr. Lopez, who opined in January and February 2021 letters that the claimant's bipolar disorder and generalized anxiety disorder are severe, and from July 2005 to July 2009, his condition "remained unstable with frequent periods of decompensation and impairment in all levels of functioning," and he could be expected to be absent from work 3-4 times a week (Ex. 9F). This opinion is inconsistent with and unsupported by the minimal treatment records noting mostly stable condition and medication refills during the period at issue (Ex. 2F), and which did not document positive exams suggestive of frequent decompensation, nor are there any records of psychiatric hospitalizations during that time. Furthermore, this opinion is unpersuasive because it was issued in early 2021, long after the claimant attained age 22. However, his statement that the claimant's prescribed medication regimen produces significant side effects affecting his cognitive abilities of focus, concentration, and processing speed (Ex. 9F/2) has been considered and accounted for in the residual functional capacity, since the claimant was on many

of the same prescribed medications throughout his treatment
relationship with Dr. Lopez.

(Tr. 16-17).

The ALJ specifically found three of Dr. Lopez's statements unpersuasive: (1)
Plaintiff's bipolar and generalized anxiety disorder were severe during the relevant
period; (2) Plaintiff's condition "remained unstable with frequent periods of
decompensation and impairment in all levels of functioning" during the relevant
period; and (3) Plaintiff would be absent from work 3-4 days a week. (Tr 16). The
ALJ found these opinions unpersuasive for two reasons: (1) they were inconsistent
with and unsupported by the minimal treatment records, which mostly showed a
stable condition and medication refills, and did not document positive exams
suggestive of frequent decompensation, or psychiatric hospitalizations during the
relevant time; and (2) they were issued in early 2021, long after Plaintiff attained the
age of 22. (Tr. 16-17).

While true that Dr. Lopez's records from the relevant time period were not
lengthy, Plaintiff generally saw Dr. Lopez every three to four months. (Tr. 285-99).
In August 2005, Dr. Lopez noted Plaintiff's anxiety increased and he had fear of
school. (Tr. 295). Dr. Lopez adjusted his medications to try to address these issues.
(Tr. 295). As explained in Dr. Lopez's March 2011 letter, which the ALJ did not
mention, in May 2006, Dr. Lopez again adjusted Plaintiff's medication to respond
to increasing episodes of aggression and temper outbursts. (Tr. 207, 293). During

2006 and 2007, Dr. Lopez reported anger and mood outbursts and adjusted Plaintiff's medications to attempt to address these behaviors. (Tr. 291-93). In June 2008, Dr. Lopez reported that Plaintiff once again decompensated, which was related to not being successful in attending school in Orlando and having to return home. (Tr. 207, 289).

While Dr. Lopez's treatment notes reflect some stable mental health examinations, he also found periods of anxiety and mood outbursts with decompensation and repeatedly adjusted Plaintiff's medications during the relevant period to attempt to address these impairments. These records support Dr. Lopez's severity finding for Plaintiff's bipolar disorder and generalized anxiety disorder. These records also support Dr. Lopez's finding that during the relevant period, Plaintiff suffered from instability, periods of decompensation, periodic anxiety, and mood disturbances, which all support his statement that Plaintiff would be absent from work 3-4 days a week. Substantial evidence does not support the ALJ's finding on the supportability and consistency of Dr. Lopez's opinion.

Next, the ALJ discounted Dr. Lopez's opinion because they were issued in early January and February 2021, long after Plaintiff attained the age of 22. But Dr. Lopez stated in the first paragraphs of both statements that he treated Plaintiff since 2000 and closely managed his mental health care since then. (Tr. 413, 415). In the February 2021 letter, Dr. Lopez specifically referenced the relevant time period. (Tr.

413). Of note, the ALJ did not mention the March 10, 2011 letter, drafted less than two years after the end of the relevant period. In that letter, Dr. Lopez refers to treatment dates during the relevant period when Plaintiff's had increasing episodes of aggression and temper outbursts, and episodes of decompensation. (Tr. 207). While this letter was also drafted after the relevant period, it clearly relates to the time at issue as do the later opinion letters.

While the Court recognizes it may not determine the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, in this case, the ALJ did not properly consider Dr. Lopez's opinions. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) Substantial evidence does not support the ALJ's finding that Dr. Lopez's opinions were unpersuasive simply because Plaintiff was "stable" at times during the relevant period or because they were written after the relevant time period. For these reasons, remand is warranted on this issue.

## C.    Remaining Issues

Plaintiff also raises issues regarding limitations in the RFC related to Plaintiff's mental impairments, consideration of Plaintiff's parents' statements, and consideration of Plaintiff's subjective complaints. Because the action is remanded to

the Commissioner to reconsider Dr. Lopez's opinions, this reconsideration would affect the RFC determination and consideration of all evidence of record.

## III.   Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr. Lopez's opinions, Plaintiff's RFC, Plaintiff's parents' statements, Plaintiff's statements, and whether the prior 2011 claim file should be associated and considered here. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on August 9, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties